## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

===============================

                               :

**AUCTUS FUND, LLC,**        :
                               :

        **Plaintiff,**        :
                               :

        **v.**             :        **Civil Action No._____**
                               :

**ENDONOVO THERAPEUTICS, INC.,** :
**and ALAN COLLIER,**        :
                               :

        **Defendants.**      :
                               :

===============================

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1.      The Plaintiff, Auctus Fund, LLC, (hereinafter "Auctus" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendants, Defendants, Endonovo Therapeutics Inc., (hereinafter the "Company" or "ENDV"), and Alan Collier and who is the Chairman of the Board of Directors, the Chief Executive Officer (hereinafter "CEO") and Interim Chief Financial Officer (hereinafter "CFO") of the Company, in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted for injunctive and equitable relief, and for its general, compensatory and consequential damages arising from, and resulting from, the Defendants' violations of the following:

        a)      Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act" or the "1934 Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

b)      Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101, *et seq.*, *as amended* (hereinafter the "Uniform Securities Act");

c)      breach of contract;

d)      breach of implied covenant of good faith and fair dealing;

e)      unjust enrichment;

f)      breach of fiduciary duty;

g)      fraud and deceit;

h)      negligent misrepresentation; and/or

i)      the Massachusetts Consumer Protection Act, M.G.L. c. 93, §§ 2 and 11.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendants' violations of the securities laws (federal and state), and its breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus has suffered irreparable harm to its business and reputation in the investment industry, damages from the Defendants' coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3.      The Plaintiff respectfully requests that its causes of action against the Defendants proceed to a trial by jury, that judgment be entered on all Counts against the Defendants and that Auctus be awarded its compensatory damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

4.     The Plaintiff, Auctus Fund, LLC is, and was during the relevant time period, a duly organized Delaware limited liability company with its principal place of business located at 545 Boylston Street, Suite 200, Boston, Massachusetts 02116.

5.     Upon information and belief, the Defendant, Endonovo Therapeutics Inc., is, and was during the relevant time period, a corporation, duly organized in the State of Delaware, and with its principal place of business located at 6320 Canoga Avenue, 15th Floor, Woodland Hills, California 91367.

6.      Upon information and belief, the Defendant, Alan Collier, is, and was during the relevant time period, a resident of the State of California.

## III. **JURISDICTION AND VENUE**

7.     The Plaintiff asserts that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

8.     The Plaintiff further contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents (defined below), the Parties agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the Commonwealth of Massachusetts. Additionally, this Court is such District where the Plaintiff is headquartered and has its principal place of business, and is where the violative conduct described herein is alleged to have occurred.

9.     This Court has personal jurisdiction, generally and specifically, over the Defendants by express terms of the Agreement, and as arising from its extensive business contacts,

generally over time and specifically in its business dealings with the Plaintiff, within the Commonwealth of Massachusetts.

## IV. <u>FACTUAL BACKGROUND</u>

### A.   <u>The Auctus / ENDV Transaction Documents and Contracts</u>

10.   On or about September 18, 2015, the Company executed, *inter alia*, a certain Securities Purchase Agreement, (hereinafter the "First Purchase Agreement" or the "First SPA"), and a certain Convertible Promissory Note, (hereinafter the "First Convertible Promissory Note," or "First Note,") for a principal amount of Fifty Five Thousand, Seven Hundred Fifty and 00/100 (**$55,750.00**) Dollars (U.S.) (hereinafter with the "First SPA," hereinafter as the "First Transaction Documents"), thereby entering into a contract with the Fund for its investment in ENDV. *See* First Purchase Agreement, attached, restated and incorporated by reference herein as **<u>Exhibit A</u>**; First Note, attached, restated and incorporated by reference herein as **<u>Exhibit B</u>**.

11.   Following this investment, the Fund notified Endonovo Therapeutics that it had caused an Event of Default pursuant to Section 3.2 of the First Note.

12.   On or about June 3, 2016, the parties entered into a Settlement Agreement and Mutual Release, fully resolving the dispute.  The Settlement and Mutual Release is attached, restated, and incorporated by reference herein as **<u>Exhibit C</u>**.

13.   On or about August 5, 2019,  the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Second Purchase Agreement" or the "Second SPA") (collectively hereinafter, with the First Purchase Agreement, the "Purchase Agreements" or the "SPAs") and a certain Convertible Promissory Note for a total of Two Hundred – Seventy - Five Thousand, Two Hundred and Fifty and 00/100 (**$275,250.00**) (U.S.) (hereinafter the "Second Note" and, with the Second SPA, hereinafter as the "Second Transaction Documents")(collectively

hereinafter, with the First Note, the "Notes") (collectively, First Transaction Documents, with the Second Transaction Documents, hereinafter as the "Transaction Documents"), thereby entering into a contract with the Fund for its further investment in ENDV. *See* Second Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit D**; Second Note, attached, restated and incorporated by reference herein as **Exhibit E**.

14.     A review of the Plaintiff's Transaction Documents reveals that the Notes have a conversion feature into which entitles the Plaintiff to convert, at amounts and upon timing that Auctus deemed appropriate, the Defendants' debt obligations, in whole or in part, into freely traded shares of ENDV common stock.  Under the terms and conditions of the Transaction Documents, the Plaintiff has, and has had, a contractual right to convert at a price for ENDV common stock, averaged over a series of prior trading days, including and preceding the Conversion Date.

15.     By the Transaction Documents, the Defendants were also required to allocate and reserve shares of the Company's common stock for future conversions by the Plaintiff. The reservation of shares was an independent obligation by the Defendants to the Plaintiff, and was a mechanism by which to effectuate the share conversion as envisioned by the Notes.

16.     Also, on or about August 7, 2019, the Defendant, Alan Collier, Chief Executive Officer of the Company, as the "Guarantor," signed and executed an "Affidavit of Confession of Judgment" (hereinafter the "COJ") as to the obligation of Endonovo Therapeutics Inc., to the Plaintiff under the Transaction Documents. See Affidavit of Confession of Judgment, dated August 7, 2019, as attached, restated and incorporated by reference herein as **Exhibit F**.

17.     As "Guarantor," the Confession of Judgment clearly demonstrates that Defendant Collier has no defenses to his liability and the entry of Judgment in the litigation. For example, in Paragraph 2 of the Confession of Judgment, Collier states, in pertinent part, as follows:

> "I hereby authorize the federal courts and/or state courts located in the Commonwealth of Massachusetts *to enter judgment against Borrower and Guarantor* in the amount of in the amount of Two Hundred Seventy Five Thousand Two Hundred Fifty Dollars, ($275,250.00) less any payments made on or after the date of this affidavit of confession of judgment,…"

COJ (**Exhibit F**), ¶¶ 1 & 2, at pp.1-2 (emphasis added).

18.     Additionally, pursuant to Paragraph 4 of the Confession of Judgment, Defendant Collier further states, in pertinent part, that:

> "The sums confessed pursuant to this affidavit of confession of Judgment are justly due and owing under the following circumstances: Borrower entered into the Note pursuant to which Borrower promised to pay the order of Investor the principal sum of Two Hundred Seventy Five Thousand Two Hundred Fifty Dollars, ($275,250.00) plus interest as provided for therein."

19.     Pursuant to Paragraph 5 of the Confession of Judgment, Defendant Collier further states, in pertinent part, that:

> "Borrower and Guarantor agrees to pay any all costs and expenses incurred by Investor enforcing the terms of this affidavit of confession of Judgment, including reasonable attorney's fees and expenses."

20.     Thus, in detrimental reliance upon the information, representations and statements from the Defendant, the Plaintiff invested hundreds of thousands of dollars in the Company, which has, and has had, a fiduciary duty and a duty of the utmost loyalty to the Plaintiff.  Unfortunately, to its detriment, the Plaintiff has learned that the Defendant had misrepresented and deceived the Fund, and omitted material information while having a duty of disclosure, regarding the Company, and perpetrated securities fraud in connection with the offer, purchase and sale of securities, in violation of, *inter alia*, Section 10(b) of the Securities Exchange Act of 1934, *as amended*, and Rule 10b-5, as promulgated thereunder, and the Massachusetts Uniform Securities Act, M.G.L. c. 110A, §§101, *et seq., as amended.*

**B.**     **Defendants' Misrepresentations and Omissions of Material Facts and Securities Fraud in Connection with Offer, Purchase and Sale of Securities**

21.     The Plaintiff asserts and alleges that the Defendants misrepresented, omitted and failed to provide material facts to Auctus in connection with its investments and in the offer, purchase and sale of securities, and especially with respect to the operations, business, finances and other matters of Defendant ENDV.

22.     As an example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about May 21, 2019, the Defendants published and disseminated certain statements, entitled "*Endonovo Therapeutics and Veterans Healthcare Supply Solutions Announce Distribution Agreement,*" which provided, in pertinent part, as follows:

> Los Angeles, CA, May 21, 2019 (GLOBE NEWSWIRE) -- Endonovo Therapeutics, Inc. (OTCQB: ENDV) and Veterans Healthcare Supply Solutions Inc. (VHSS) today announced a long-term agreement encompassing the distribution of SofPulse® to Veterans Administration Facilities and Department of Defense Healthcare Facilities.
>
> Alan Collier, Endonovo's Chief Executive Officer, stated, "The team at VHSS have streamlined and improved the sales, marketing and distribution of medical devices to VA and DoD facilities. VHSS is a true leader in the space and we are thrilled to have the capacity to support their mission. This agreement, which includes direct delivery to all medical facilities, extends beyond traditional distribution and includes access to their 900 Federal Contract Officers as well as their distribution center with a state of the art ERP and WMS Systems."
>
> Gary Skura, President VHSS - VHSS is excited to partner with Endonovo, as our primary goal is providing leading edge products and services to eligible federal government healthcare constituents. Our new partnership with Endonovo will certainly allow us to further continue our core objectives.
>
> About Veterans Healthcare Supply Solutions Inc.
>
> Founded in 2010 and headquartered in Jacksonville, Florida, USA, VHSS is a diversified medical equipment and healthcare supplies distributor focusing primarily on the federal healthcare market. VHSS was founded by Gary Skura, a retired Navy pilot with over 30 years of healthcare distribution experience. VHSS represents many large manufacturers covering a wide range of products in nearly every major category in healthcare. VHSS was recognized as a Top Service-

Disabled Veteran Owned Small Business (SDVOSB) for 2014 and 2015 by U.S. Veterans Magazine, won the Best Veterans Healthcare Products Supplier for 2016 by The Small Cap Awards, and was selected as the Best of Jacksonville for Medical Equipment Distribution for 2016, 2017, 2018 and 2019. VHSS was inducted into the Jacksonville Small Business Hall of Fame in 2017.

Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

23.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about May 29, 2019, the Defendants published and disseminated certain statements, entitled "*Coverage Initiated for Endonovo Therapeutics via NetworkNewsWire*" which provided, in pertinent part, as follows:

NEW YORK, May 29, 2019 (GLOBE NEWSWIRE) -- via NetworkWire -- Endonovo Therapeutics (OTCQB: ENDV), an innovative biotechnology company developing a bioelectronic approach to regenerative medicine, today announces it has selected the corporate communications expertise of NetworkNewsWire ("NNW").

Endonovo's non-invasive medical devices are designed to deliver its proprietary Electroceutical™ Therapy for the treatment of inflammatory conditions, cardiovascular diseases and central nervous system disorders. Endonovo's Electroceutical™ therapeutic device, SofPulse® is FDA-cleared for the promotion of the palliative treatment of post-surgical pain and edema (swelling) and CE Marked for the promotion of wound healing and the palliative treatment of post-surgical pain and edema, and has received CMS National Coverage for the treatment of chronic wounds. The Company's current pipeline of clinical-stage Electroceutical™ Therapies targets cardiovascular diseases and central nervous system disorders, including ischemic heart disease, acute concussions, post-concussion syndrome, traumatic brain injury (TBI) and multiple sclerosis.

NNW is a multifaceted financial news and publishing company that delivers a new generation of social communication solutions, news aggregation and syndication, and enhanced news release services. NNW's strategies help public and private organizations find their voice and build market visibility. As part of the Client-Partner relationship with Endonovo, NNW will leverage its investor-based distribution network of over 5,000 key syndication outlets, various newsletters, social media channels, blogs, and other outreach tools to generate greater brand awareness for the company.

"While Endonovo focuses on the advancement of its products to improve the patient's post-operative experience, we will execute a corporate communications campaign that places its strategy and accomplishments in front of the investment community," states Sherri Franklin, Director of Client Solutions for NNW.

Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

24.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about June 13, 2019, the Defendants published and disseminated certain statements, entitled "*Endonovo Therapeutics Announces National Rollout of SofPulse® Post-Operative Opioid Alternative into Hospitals,*" which provided, in pertinent part, as follows:

WOODLAND HILLS, Calif., June 13, 2019 (GLOBE NEWSWIRE) -- via NetworkWire -- Endonovo Therapeutics, Inc. (OTCQB: ENDV) ("Endonovo" or the "Company"), a commercial-stage developer of non-invasive Electroceutical™ therapeutic devices, announced today its initial plans and strategy for a national rollout of its SofPulse® targeted pulsed electromagnetic field (tPEMF) therapy device to hospitals throughout the United States.

The Company has recently signed agreements with six master distributors and has hired approximately 40 sales associates. Endonovo's plan is to have 300 sales representatives and be in the evaluation stage with 600 hospitals within the next 18 months.

To support the national rollout, Endonovo has appointed Ken Snider as national sales manager and DevicePharm as marketing firm of record.

Ken Snider started his career in pharmaceutical sales in 1989 with Pfizer Inc. as a primary care representative selling products for the treatment of high blood pressure, diabetes and arthritis. Ken was promoted to work at Pfizer Headquarters in New York City as curriculum development manager, writing learning systems and sales training systems for 15 different products. Throughout Ken's tenure at Pfizer, he was responsible for developing the sales training materials for national launch meetings, regional sales meetings and district sales meetings. Ken was also the product presenter for some of the most successful products in Pfizer and pharmaceutical industry history.

DevicePharm is a marketing strategy and integrated marketing solutions firm for organizations serving medical professionals and healthcare consumers. Since 2002,

DevicePharm has served dozens of medical device, biotech and life science companies as well as select healthcare service firms in the United States and around the world. The team has launched over 500 healthcare brands and has been recognized with dozens of awards for marketing strategy, marketing campaign effectiveness, medical advertising, direct-to-consumer advertising, digital and interactive media and creative excellence.

Alan Collier, Endonovo's chief executive officer, stated, "After careful consideration and discussions, and in accordance with our internal budgets, we have reached the point at which we can confidently announce our national rollout plan and strategy. We believe, based on numerous meetings with doctors and hospital administrators, the level of acceptance of our SofPulse® device supports our plans to be in hospitals throughout all 50 states by 2020. With the public demanding change and options other than opioids, and with very few alternatives to satisfy those demands, SofPulse® is a natural and safe replacement to opioids and a solution to this health crisis."

"Ken is a great fit for the national sales manager position. I am confident that his experience and knowledge will help cultivate our customer-centric sales model and drive our company goals. We are delighted to have him onboard," continued Mr. Collier, adding, "DevicePharm's past successes and overall knowledge within this space will assist us in brand development and working with our sales team to create marketing materials that educate the decision-makers at hospitals as well as consumers."

Mr. Collier concluded, "Based on the current progress, we expect to be cash flow positive by this year-end and generating over $300 million in sales in 2020."

The Company has filed an 8-K with the Securities and Exchange Commission providing its new marketing plan with sales projections. A link to view the plan will be available later today on the NetworkNewsWire website under "Additional Resources" at the following link: http://nnw.fm/K4keD.

Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

25.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about June 21, 2019, the Defendants published and disseminated certain statements, entitled "*Endonovo Therapeutics Appoints Dr. Steven Levin of Johns Hopkins University to Its Scientific Advisory Board,"* which provided, in pertinent part, as follows:

"WOODLAND HILLS, Calif., June 21, 2019 (GLOBE NEWSWIRE) -- via NetworkWire – Endonovo Therapeutics, Inc. (OTCQB: ENDV) ("Endonovo" or the "Company"), a commercial-stage developer of non-invasive Electroceutical™ therapeutic devices, today announces the appointment of Steven Levin, M.D., to its scientific advisory board. Dr. Levin will work with the Endonovo team to facilitate the introduction of SofPulse® to healthcare facilities and further develop the Electroceutical™ devices pipeline.

"Dr. Levin's vast experience with novel therapies in the anesthesiology and pain management field, as well as his strong research interest to improve clinical practice in pain management, will be valuable scientific additions to Endonovo," said Alan Collier, CEO, Endonovo Therapeutics. "As a leader in the field of pain management, Steven will contribute valuable knowledge and expertise as we move our programs forward."

"It is a great opportunity to participate in developing Endonovo's promising fight to support pain management and healing in a natural and holistic way," said Dr. Levin. "I look forward to helping guide Endonovo's breakthrough treatments and fight against the opioid crisis as a member of the scientific advisory board."

**Background – Steven C. Levin, M.D.**

Dr. Levin is the regional medical director at Johns Hopkins School of Medicine and medical director at Howard County General Hospital in Columbia, Maryland. Additionally, he is an assistant professor at Johns Hopkins School of Medicine, Department of Anesthesiology.

Dr. Levin is currently the co-chair of the Opioid Stewardship Clinical Community as well as a clinical design team leader of the Musculoskeletal Center in the Johns Hopkins Health System. Additionally, Dr. Levin has previously served on the medical school facility at Yale University and at University of Pittsburgh Medical Center.

Dr. Levin received his undergraduate degree from University of Pennsylvania and medical degree at the University of Pittsburgh. He completed his residency and fellowship at the University of Pittsburgh Medical Center. His membership in professional and scientific societies has included the American Society of Anesthesiology, American Pain Society, American Society of Regional Anesthesia, Society in Anesthesia and International Association for the Study of Pain.

Collier stated, "As we look to establish and expand a scientific board, Steven is a natural fit for us. I am looking for experienced experts that have the ability to communicate in the medical community the effectiveness and safety SofPulse® as a replacement for opioids in post-surgery and care."

Upon information and belief, the Defendants' statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

26. Upon information and belief, Defendant ENDV made misrepresentations regarding the supposed progress as to its business, operations and finances as to the Company, prior to and in connection with the offer, purchase and sale of securities with the Plaintiff, and as it was contemplating making investments of hundreds of thousands of dollars in the Company.

27. As a direct and proximate cause of the violations of the federal securities laws of the Defendant, Auctus has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

**C.      Defendants' Events of Default and Breaches of SPA's and Notes**

28. Thereafter, it is undisputed that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled *Events of Default*," of the Second Note. In addition, pursuant to Section 3.10, an Event of Default shall have occurred by the failure of the Company to properly allocate and/or reserve shares of common stock for the Fund upon its election of conversion, in whole or in part, and its failure to pay the principal and/or interest, when due under the terms of the Note. *See* Second Note (**Exhibit E**), § 3.10. Such Events of Default, together with others, have occurred and continue to occur.

29. Upon the occurrence of an Event of Default under Section 3.1 of the Note, the entire principal and accrued interest shall be due and owing hereunder. Furthermore, an event of Default pursuant to Section 3.10 of such Note, the Company is required to pay, and shall pay, the Fund the "Default Sum" (as defined therein), due under the Note as multiplied by One Hundred - Fifty and 00/100 (150.00%) percent. Thus, as of July 8, 2020, the Company owes the Fund, under the Second

SPA and the Second Note, the Default Sum totaling Five Hundred Three Thousand – Five Hundred – Ninety-Five and 40/100 (**$503,595.40**) Dollars (U.S.). *See* **Exhibit 1**, as attached, restated and incorporated by reference herein. Until paid, the Default Sum shall continue to accrue the default interest rate of Twelve and 00/100 (12.00%) percent per year, provided by the Note.

30.     In sum, the Defendants perpetrated a fraud upon the Plaintiff, which suffered as a consequence. The Defendants have been unjustly enriched and converted the Plaintiff's assets, causing it to suffer further damages.  As a result of the fraudulent scheme, concealment, and omissions of the Defendant, the Plaintiff lost substantial monies and lost opportunity in such assets.

## V. <u>VIOLATIONS OF LAW</u>

### <u>COUNT I - VIOLATIONS OF FEDERAL SECURITIES LAWS</u>
### <u>(as to all Defendants)</u>

31.     The Plaintiff reasserts Paragraphs 1 through 30 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

32.     The Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

        a)     employed manipulative and deceptive devices and contrivances;

        b)     employed devices, schemes and artifices to defraud;

        c)     made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and

        d)     engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff.

33.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, engaged in one or more common plans, schemes, and unlawful courses of conduct, to operate or perpetrate a fraud or deceit upon the Plaintiff, in connection with the offer, purchase and/or sale of ENDV securities.

34.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff in connection with the offer, purchase and/or sale of ENDV securities.

35.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, published and disseminated false, deceptive and untrue statements of material facts to the Plaintiff in connection with the offer, purchase and/or sale of ENDV securities.

36.     During the relevant time period and as set forth herein, the Defendants omitted material facts, with a duty to disclose such material facts, which a reasonable investor would require in order to make its investment decision, and in order to mislead the Plaintiff in connection with the offer, purchase and/or sale of ENDV securities.

37.     During the relevant time period and as set forth herein, the Defendants made misrepresentations of material fact, and/or omitted material facts while a duty to disclose the same, which a reasonable investor, including the Plaintiff, would require in making its investment decision, and upon which it relied, to its detriment.

38.     During the relevant time period and as set forth herein, the Defendants' purpose and effect of the scheme, plan, and unlawful course of conduct was, *inter alia,* to induce Plaintiff and others to purchase ENDV securities.

39.     As a direct and proximate cause of the violations of the federal securities laws by the Defendants, Auctus has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

<u>**COUNT II - VIOLATIONS OF MASSACHUSETTS STATE SECURITIES LAWS**</u>
<u>**(as to all Defendants)**</u>

40.     The Plaintiff reasserts Paragraphs 1 through 39 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

41.     The Defendants violated Massachusetts Uniform Securities Act, Massachusetts General Laws Chapter 110A, §§ 101, *et seq.*, *as amended*, in that, as described herein, it offered and sold securities by means of untrue statements of material fact.

42.      The Defendants recklessly and intentionally omitted disclosure of pertinent material facts in an attempt to make its previous statements appear to not be misleading.

43.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, engaged in one or more common plans, schemes, and unlawful courses of conduct, to operate or perpetrate a fraud or deceit upon the Plaintiff, in connection with the offer, purchase and/or sale of ENDV securities.

44.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff in connection with the offer, purchase and/or sale of ENDV securities.

45.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, published and disseminated false, deceptive and untrue statements of material facts to the Plaintiff in connection with the offer,

purchase and/or sale of ENDV securities.

46.     During the relevant time period and as set forth herein, the Defendants omitted material facts, with a duty to disclose such material facts, which a reasonable investor would require in order to make its investment decision, and in order to mislead the Plaintiff in connection with the offer, purchase and/or sale of ENDV securities.

47.     During the relevant time period and as set forth herein, the Defendants made misrepresentations of material fact, and/or omitted material facts while a duty to disclose the same, which a reasonable investor, including the Plaintiff, would require in making its investment decision, and upon which it relied, to its detriment.

48.     During the relevant time period and as set forth herein, the Defendants' purpose and effect of the scheme, plan, and unlawful course of conduct was, *inter alia,* to induce Plaintiff and others to purchase ENDV securities.

49.     As a direct and proximate cause of the violations of the Massachusetts state securities laws by the Defendants, Auctus has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT III – BREACH OF CONTRACT
### (as to Defendant ENDV)

50.     The Plaintiff reasserts Paragraphs 1 through 49 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

51.     Pursuant to the Second SPA and the Second Note, the Fund invested in the Company and sought to become a shareholder, in good faith, to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the

securities industry.  The Fund contends that the Defendant breached the contract with the Plaintiff by its conduct, as described herein.

52.     The Fund alleges that the Company is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing. A breach of contract is failure without excuse to perform a duty, which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact. If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

53.     The Plaintiff performed its obligations under the Second Purchase Agreement and the Second Note, and in good faith.

54.     The Defendant, by its conduct described herein, violated the Second Purchase Agreement and the Second Note, breaching its contract with the Plaintiff.

55.     As a direct and proximate cause of the Defendants' breaches of its contract, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IV – BREACHES OF IMPLIED
## COVENANT OF GOOD FAITH-FAIR DEALING
### (as to Defendant ENDV)

56.     The Plaintiff reasserts Paragraphs 1 through 55 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

57.     It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement

on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

58.     A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Company breached and failed to comply with the covenant of good faith and fair dealing. The law is clear - the Fund had a binding contract and the Company has no legal basis, as a matter of law, to avoid its obligations under the Second Note or the damages, including but not limited to damages set forth pursuant to Section 3.10 of such Note which arose as a result from the breach of the Second Purchase Agreement and the Second Note.

59.     The Defendant had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contract, and statements made to the Plaintiff to induce it to enter into the contract and provide assets to the Defendant in exchange for its promise to repay the same, with interest.

60.     Under the covenant, the Defendant was obligated to good faith perform of its obligations under the Second Purchase Agreement and the Second Note with the Plaintiff, and to be faithful and consistent to the justified expectations of the Plaintiff.

61.     As described above, the Defendant breached the implied covenant of good faith and fair dealing with the Plaintiff.

62.     As a direct and proximate cause of the Defendants' breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT V – UNJUST ENRICHMENT
### (as to all Defendants)

63.     The Plaintiff reasserts Paragraphs 1 through 62 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

64.     The Defendants illegally received assets and benefits from the Plaintiff, as arising from its false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

65.     The Defendants' actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

66.     The Defendants have been unjustly enriched by its actions, as described herein.

67.     As a direct and proximate cause of the Defendants' unjust enrichment, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VI – BREACH OF FIDUCIARY DUTY
### (as to all Defendants)

68.     The Plaintiff reasserts Paragraphs 1 through 67 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

69.     A fiduciary relationship existed between the Plaintiff and the Defendants, requiring them to act with a duty of the utmost loyalty and trust on behalf of the Plaintiff.  As fiduciaries, the Defendants were required to maintain and protect the welfare of the Plaintiff.

70.     By engaging in the conduct described herein, the Defendants breached their fiduciary duties to the Plaintiff.

71.     As a direct and proximate cause of the Defendants' breach of fiduciary duty, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

### COUNT VII - FRAUD AND DECEIT
**(as to all Defendants)**

72.     The Plaintiff reasserts Paragraphs 1 through 71 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

73.     The actions of the Defendants described herein constitute fraud and deceit, including but not limited to the following:

a)     the Defendants made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

b)     the Defendants made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

c)     the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

74.     As a direct and proximate cause of the Defendants' fraud and deceit, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

### COUNT VIII - NEGLIGENT MISREPRESENTATION
**(as to all Defendants)**

75.     The Plaintiff reasserts Paragraphs 1 through 74 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

76.     The conduct of the Defendants as described herein constitutes negligent

misrepresentation in that the Defendants negligently provided the Plaintiff with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

77.     As a direct and proximate cause of the Defendants' negligent misrepresentations, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IX - VIOLATIONS OF MASSACHUSETTS
## CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11
### (as to all Defendants)

78.     The Plaintiff reasserts Paragraphs 1 through 77 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

79.     At all relevant times herein, the Defendants conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

80.     The conduct of the Defendants as described herein, constitutes unfair and deceptive trade practices, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to claims that the Defendants:

a)      executed the Second Securities Purchase Agreement and the Second Note with full knowledge and understanding of the Defendants' obligations to the Plaintiff, as evidenced by its previous completions of said obligations on the First Transaction Documents;

b)      fraudulently induced the Plaintiff to invest in the Company a second time and thereby breached its promise to repay the Plaintiff;

c)      fraudulently concealed from the Plaintiff the full and complete financial and operational details and prospects of the Company in inducing the Plaintiff to make its investment in the Company;

d)      knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

e)      violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

81.      As a direct and proximate cause of the Defendants' violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Auctus Fund, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)     Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)     Determine that the Defendants are liable for all damages, losses, and costs, as alleged herein;

C)     Determine and award the Plaintiff, Auctus Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendants, as set forth herein;

D)     Render a judgment and decision on behalf of the Plaintiff, Auctus Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants are liable, in all respects;

E)     Order, decide, adjudge, and determine that the liability of the Defendants,  is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)     Award the Plaintiff, Auctus Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G)     Award the Plaintiff, Auctus Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

H)      Award the Plaintiff, Auctus Fund, LLC, multiple, double, treble, and/or punitive

damages in an amount to be determined;

I)      Enter judgment on behalf of the Plaintiff, Auctus Fund, LLC, on the Complaint;

J)      Order declaratory relief, as appropriate and as this Honorable Court deems

necessary; and/or

K)      Any additional relief which this Honorable Court deems just and proper.

**THE PLAINTIFF, AUCTUS FUND LLC,**
**<u>DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**

Respectfully Submitted,
PLAINTIFF, Auctus Fund LLC,

By its Attorneys,

_/s/  Philip M. Giordano_
Philip M. Giordano, Esq. (BBO No. 193530)
Sophia E. Kyziridis, Esq. (BBO No. 703590)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Dated: July 8, 2020          Email: skyziridis@reedgiordano.com