UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AUCTUS FUND, LLC,

        Plaintiff,

v.

ENDONOVO THERAPEUTICS, INC.,
and ALAN COLLIER,

        Defendants.

No. 20-CV-11288-PBS

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS**

Plaintiff Auctus Fund, LLC (Auctus), a provider of high-risk business loans, contends that defendant Endonovo Therapeutics (Endonovo) and its chief financial officer, defendant Alan Collier, made misrepresentations to secure a loan on which they subsequently defaulted. The operative amended complaint asserts several federal and state claims. The defendants move to dismiss or for judgment on the pleadings; the plaintiff opposes.[1]  (D. 70,

---

[1] The defendants presume that their motion should be treated as a Rule 12(c) motion for judgment on the pleadings rather than a Rule 12(b)(6) motion to dismiss where the pleadings have closed, i.e., where they have answered the complaint and asserted several counterclaims as well. However, the original complaint and any pleadings filed in response to it, including the defendants' counterclaims, were mooted when the plaintiff subsequently filed an amended complaint. See D. 61 (finding plaintiff's motion to dismiss counterclaims "moot in light of the Amended Complaint"). Where no responsive pleading has yet been filed in connection with the operative amended complaint, the pleadings have not closed for Rule 12(c) purposes and the court thus treats the present motion as one to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

84).  The matter has been fully briefed and referred to me for a report and recommendation.  For the reasons discussed below, I recommend that the motion be GRANTED and that the case be dismissed in its entirety.

## I.    RELEVANT BACKGROUND

The relevant facts are drawn from the amended complaint, the well-pleaded allegations of which are taken as true for purposes of evaluating the motion to dismiss.  *See Ruivo v. Wells Fargo Bank, N.A.,* 766 F.3d 87, 90 (1st Cir. 2014).

Auctus is a Delaware company with its principal place of business in Boston.  Amended Complaint (Am. Compl.) ¶ 4.  Endonovo, which markets a medical device using magnetic pulses to alleviate pain and swelling, is also incorporated in Delaware but based in California.  (*Id.* ¶ 5).  Collier is a resident of North Carolina. (*Id.* ¶ 6).

In August 2019, Auctus executed a Securities Purchase Agreement (Agreement) and Convertible Note (Note) with Endonovo for a $275,250 loan.  (*Id.* ¶ 13).  In connection with this loan, Collier also executed an Affidavit of Confession of Judgment (COJ). (*Id.* ¶ 14).

The Note gave Auctus the right to convert, at times of its own choosing, Endonovo's debt obligation in whole or in part into shares of Endonovo common stock, which it could then sell to apply to the loan.  Endonovo was also required to allocate and reserve

shares of its common stock to enable these conversions. Auctus maintains that this setup was necessary to guard against a loan recipient's inability to pay back the loan. (*Id.* ¶¶ 15-17).

Auctus contends that Endonovo committed several acts constituting default after receiving the loan. Among other things, Endonovo failed to disclose that it was nothing more than a "shell company." This mattered because it meant Auctus would not be able to sell Endonovo's shares on the public market if needed to. (Id. ¶ 28). In support of this allegation, Auctus notes that even though Endonovo in April 2019 made "representations"[2] that (i) it was the commercial stage developer of a non-invasive electroceutical device, (ii) that its revenue was expected to increase by 80 percent over the same quarter, and (iii) that it would continue to exercise its business plan and strategy to expand electro-magnetic therapy, it subsequently reported a year later in May 2020, on its Form 10-K for the 2019 fiscal year, that it had accumulated a deficit of over $50 million since its inception, suggesting that its prior representations were false and fraudulent. (*Id.* ¶¶ 29-33). In addition, Endonovo also allegedly failed to allocate shares of stock for conversion and failed to pay principal and interest on the loan. (*Id.* ¶ 42).

---

[2] The amended complaint does not identify the source of these "representations" but the defendants state in their memorandum that they were contained in a press release.

3

## II.   THE AMENDED COMPLAINT

The amended complaint asserts two federal claims and ten state claims.

With respect to federal claims, it alleges (1) a violation of Section 10(b) of the Securities Exchange Act (the Exchange Act), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder; and (2) "control person" liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

With respect to state claims, it alleges (1) a violation of the Massachusetts Uniform Securities Act, M.G.L. c. 110A, §§ 101 and 410(a); (2) "control person" liability under those same laws; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) unjust enrichment; (6) breach of fiduciary duty; (7) fraud; (8) negligent misrepresentation; (9) violation of the Massachusetts consumer protection statute, M.G.L. c. 93A; and (10) civil conspiracy.

## III.   STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)).  To survive such a motion, the plaintiff must provide "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555 (quotation marks and alteration omitted).   The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555 (internal citations omitted).

## IV.   <u>DISCUSSION</u>

The defendants advance several arguments for why each of the plaintiff's claims should be dismissed.   In their reply brief, however, they note that, assuming the two federal claims were to be dismissed, there would be no basis for federal court jurisdiction and the remaining state law claims could be dismissed without further consideration if the court were to decline to exercise supplemental jurisdiction over them.   With that consideration in mind, the court considers the plaintiff's two federal claims first.

### <u>Count I – Violation of Rule 10b-5</u>

Count I alleges that the defendants violated section 10(b) of the Exchange Act and Rule 10b-5.  Under Rule 10b-5, it is unlawful for an entity purchasing securities:

(a)  To employ any device, scheme, or artifice to defraud,

5

(b)   To make any untrue statement of a material fact or to
      omit to state a material fact necessary in order to
      make the statements made, in the light of the
      circumstances under which they were made, not
      misleading, or

(c)   To engage in any act, practice, or course of business
      which operates or would operate as a fraud or deceit
      upon any person.

17 C.F.R. § 240-10b-5.  To state a valid 10b-5 claim for securities fraud, a complaint must allege (1) a material misrepresentation or omission; (2) scienter, or a wrongful state of mind; (3) a connection with the sale or purchase of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 56 (1st Cir. 2018).  "Further, [a plaintiff] must satisfy the Federal Rule of Civil Procedure 9(b) standard for alleging fraud with particularity and comply with the heightened pleading requirements imposed by the Private Securities Litigation Reform Act (the "PSLRA")."  *Auctus Fund, LLC v. NuGene Int'l, Inc.*, No. 20-cv-11336-ADB, 2021 WL 1069462, at *2 (D. Mass. Mar. 19, 2021) (citing *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008)).  Pursuant to the PSLRA, a plaintiff "'must, with respect to each alleged act or omission, *state with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind.'"  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,

632 F.3d 751, 757 (1st Cir. 2011) (emphasis in original) (quoting 15 U.S.C. § 78u-4(b)(2)).

A failure to adequately plead any of these elements justifies dismissal of the 10b-5 claim. *See, e.g.*, *Hill v. Gozani*, 638 F.3d 40, 70 (1st Cir. 2011) (affirming dismissal of 10b-5 claim because complaint failed to identify actionable misstatements); *Coyne v. Metabolix*, 943 F. Supp. 2d 259, 275 (D. Mass. 2013) (dismissing 10b-5 allegations for failure to plead loss causation); *In re Galileo Corp. S'holders Litig.*, 127 F. Supp. 2d 251, 266 (D. Mass. 2001) (dismissing 10b-5 allegations where complaint failed to allege facts raising  strong inference of scienter as required by Rule 9 and PSLRA).  Applying this heightened standard here, the complaint fails to state a valid claim for violation of Rule 10b-5 because it fails to allege facts showing a material misrepresentation or scienter.

a. The complaint fails to adequately plead that Endonovo made material misrepresentations.

To begin, Auctus contends that Endonovo made material and false statements regarding its expected production, growth and financial performance in order to secure a loan from Auctus, and in so doing also failed to disclose that Endonovo was in reality a shell corporation.  Auctus contends the misrepresentations were material because investors in shell companies are prohibited by SEC rules from selling shares of the company in the public market,

a critical option Auctus was to enjoy under the Note, and Auctus would not have made the loan if it did not have that option. Regarding falsity, Auctus notes that none of Endonovo's projections proved to be true and Endonovo in fact subsequently reported a year later that it had accumulated a deficit of over $50 million since its inception. Auctus relies on the stark dichotomy between Endonovo's optimistic predictions and its actual disappointing performance to support its contention "upon information and belief" that Endonovo was a shell company from the outset and its April 2019 statements were thus necessarily false when made.

However, even accepting that Endonovo did not perform as it predicted it would, and indeed performed quite poorly, that does not mean that Endonovo was at all times a shell company or that it was not sincere when it made its statements in April 2019, and the complaint fails beyond speculation to allege specific facts that would permit one to infer as much. The complaint does not allege any facts, for example, to suggest that Endonovo was in fact not the end-stage developer of an electroceutical device, or knew or had reason to know that its revenue would not increase by 80 percent. It also does not allege the existence of any contemporaneous information, such as emails, reports or studies, tending to show that Endonovo's projections were not credible when made.

The plaintiff's failure to point to anything more than Endonovo's subsequent poor performance as proof that Endonovo was a shell company, or that its prior statements were untrue when made, undermines its 10b-5 claim, particularly where Endonovo's performance could have just as plausibly come about through hard work and bad luck. Indeed, other courts in this district have dismissed a Rule 10b-5 (or corresponding common law misrepresentation) claim brought by Auctus for failing to assert more than conclusory allegations to show a material misrepresentation.

In one case, for example, where Auctus alleged that a defendant's statements concerning a long and prosperous business partnership it expected to have with another entity were misleading, the court found the allegation (and thus Auctus' 10b-5 claim) to be lacking where Auctus asserted no facts to suggest that the referenced partnership failed to exist or that the defendant knew at the time of its statements that the relationship would not endure very long. *See Auctus Fund, LLC  v. NuGene,* 2021 WL 1069462, at \*4. In another matter, Auctus alleged a 10b-5 violation based on allegedly misleading statements the defendant reportedly made in press releases the defendant had issued before and after executing a promissory note to Auctus, but the court dismissed the claim because Auctus failed to identify which statements in the releases were inaccurate or incomplete. *Auctus*

*Fund, LLC v. Sauer Energy, Inc.*, 444 F. Supp. 3d 279, 291 (D. Mass. 2020), *aff'd*, No. 20-1441 (1st Cir. Oct. 14, 2021); *see also Auctus Fund, LLC v. First Columbia Gold Corp.*, Civ. A. No. 17-10543-ADB, 2019 WL 1316736, at *2 (D. Mass. Mar. 21, 2019); *Auctus Fund, LLC v. ERHC Energy, Inc.*, Civ. A. No. 18-10216-ADB, 2019 WL 1316749, at *2 (D. Mass. Mar. 21, 2019).

Auctus' 10b-5 claim suffers from a similar deficiency here. Even acknowledging that Endonovo did not perform as projected, Auctus has simply failed to assert any non-conclusory facts to show that Endonovo's April 2019 statements were false when made, or that Endonovo was nothing more than a shell company.  Count I thus fails to state a valid claim.  *See*, *e.g.*, *Gozani*, 638 F.3d at 70.

b. The complaint also fails to adequately plead scienter.

For similar reasons, the complaint fails to give rise to a strong inference that Endonovo acted with the required scienter for a securities violation.  To adequately plead scienter, a plaintiff must allege particular facts showing "either conscious intent to defraud or a high degree of recklessness." *Advest*, 512 F.3d at 58.  Scienter in securities matters may be shown by "'clear allegations, internal records, or witnessed discussions suggesting that at the time they made the statements claimed to be misleading, the defendants were aware they were withholding vital information' or by a combination of 'various other facts and circumstances

10

indicating fraudulent intent, including those demonstrating motive and opportunity.'" *Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 213 (D. Mass. 2018) (quoting *Brennan v. Zafgen, Inc.*, 853 F.3d 605, 614) (1st Cir. 2017)).

The complaint alleges no such facts here. Rather, and as noted above, Auctus merely looks to Endonovo's poor performance following its April 2019 projections to suggest that Endonovo thus somehow knew or had a basis to know it would not be able to pay its obligations as they became due. (Am. Compl. ¶ 32). However, a plaintiff must go beyond alleging that financial projections proved incorrect, *see NuGene*, 2021 WL 1069462, at *5 (citing *Avtest*, 512 F.3d at 62), and may not rely on a "fraud by hindsight" theory, which simply contrasts a projection with less favorable later results, and then maintains that the difference must be due to fraud. *See Metzler Asset Mgmt. GmbH v. Kingsley*, 305 F. Supp. 3d 181, 204 (D. Mass. 2018).

That is the case here. Even given the most generous reading, the amended complaint seeks to show scienter not through particularized facts tending to show Endonovo knew its statements were untrue, but rather by pointing to Endonovo's subsequent poor performance as proof that its hopeful statements a year earlier were knowingly false. This is not enough and the failure to do more warrants dismissal of the claim. *See, e.g.*, *Tharp v. Acacia Corp.*, 321 F. Supp. 3d 206, 229 (D. Mass. 2018) (dismissing 10b-5

11

counts where plaintiffs failed to refer to any internal records or witnessed discussions to suggest defendant understood its statements to be misleading); *City of Bristol Pension Fund v. Vertex Pharm., Inc.*, 12 F. Supp. 3d 225, 239-40 (D. Mass. 2014) (dismissing 10b-5 claims where plaintiffs offered "few concrete allegations" to support allegation that defendants knew statements were false).

Accordingly, Count I fails to state a valid claim for relief and should be dismissed.[3]

### Count II – "Control Person" Liability

Count II alleges that the defendants are "control persons" within the meaning of the Exchange Act and as such are liable beyond their own liability for the conduct of the company.[4] However, this is a claim that is wholly derivative of Count I; if there is no basis for primary liability under federal securities law, there is no basis for "controlling person" liability. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 84 (1st Cir. 2002).

---

[3] The defendants also argue that the amended complaint fails to adequately allege that Auctus reasonably relied on the defendants' alleged misstatements. It is not necessary to consider this argument in light of the court's conclusion noted above but dismissal of securities claims based on a lack of reliance is generally disfavored because reliance is typically a fact question. *See, e.g.*, *Damian v. Montgomery Cnty. Bankshares, Inc.*, 255 F. Supp. 3d 1265, 1282 (N.D. Ga. 2015); *cf. Computer Sales Int'l, Inc. v. Lycos, Inc.*, Civ. A. No. 05-10017-RWZ, 2005 WL 3307507, at *4 (D. Mass. Dec. 6, 2005) (noting in the context of fraud allegations that reasonable reliance is generally a question of fact).

[4] Count II is alleged "as to all defendants" but the court presumes it is intended to be alleged only against Collier.

Given the court's conclusion that Count I fails to state a valid claim, Count II should be dismissed.

### The State Law Claims

As the court's jurisdiction is predicated on federal question jurisdiction, dismissal of the two federal claims means the court would need to exercise supplemental jurisdiction to consider the remaining state claims.  Although the defendants have briefed the state law claims on the merits, they also ask that the court decline to exercise its supplemental jurisdiction to hear those claims.

As a general principle, "the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit. . . will trigger the dismissal without prejudice of any supplemental state-law claims."  *Auctus Fund, LLC v. Sauer Energy*, 444 F. Supp. 3d at 282 (quoting *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995)); *cf. Auctus Fund, LLC v. NuGene*, 2021 WL 106946, at *7 (while allowing Auctus opportunity to amend complaint to adequately plead federal securities fraud, court noted that "ordinarily, [the court] would decline to continue exercising supplemental jurisdiction over Auctus' state law claims"); *Auctus Fund, LLC v. Redwood Sci. Tech.*, 2020 WL 10313914, at *2 (same). This consideration thus militates against exercising supplemental jurisdiction in the event the federal claims are dismissed. Further, dismissing the state claims would not cause any

13

limitations concerns should Auctus desire to continue to pursue its claims in state court. *See Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598-608 (2018) (under supplemental jurisdiction statute, filing of federal action tolls statutes of limitations on state law claims and allows 30 days to file state court action following dismissal of federal action). For these reasons, the court should decline to exercise supplemental jurisdiction over the state law claims and instead dismiss those claims without prejudice.[5]

---

[5] In light of the foregoing, it is unnecessary to consider defendant Collier's argument that the court lacks personal jurisdiction over him due to insufficient contacts.

## V.    RECOMMENDATION

The court recommends for the foregoing reasons that the defendants' motion to dismiss the amended complaint (D. 70) be granted.  Counts I and II should be dismissed on the merits for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The remaining state claims (Counts III through XII) should be dismissed without prejudice for lack of subject matter jurisdiction.[6]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: February 28, 2022

---

[6] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).